UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

———————

№ 03-CV-2633 (JFB) (RLM)

———————

CYRUS MCCALLA, M.D.,

Plaintiff,

VERSUS

SUNY DOWNSTATE MEDICAL CENTER,
UNIVERSITY HOSPITAL OF BROOKLYN, DOWNSTATE
OB/GYN P.C., AND OVADIA ABULAFIA, M.D.,

Defendants.

———————

MEMORANDUM AND ORDER
June 8, 2006

———————

JOSEPH F. BIANCO, District Judge:

Cyrus McCalla, M.D., an African-American doctor born in Jamaica, brings this employment discrimination case against defendants SUNY Downstate Medical Center, University Hospital of Brooklyn (collectively "SUNY"), Downstate OB/GYN, P.C. ("OB/GYN"), and Ovadia Abulafia, M.D. Plaintiff alleges defendants violated the law, including (1) Title VII based on a hostile work environment, failure to promote, wrongful termination, "steps taken to destroy plaintiff's career," and retaliation; (2) New York City and State Law ("NYHRL"); (3) 42 U.S.C. § 1981; (4) tortious interference with a business relationship; (5) breach of contract; (6) conversion; and (7) defamation. Plaintiff's amended complaint also seeks an accounting of all income received by OB/GYN during plaintiff's final six months of employment. During the briefing of this motion, plaintiff stipulated to the dismissal of several claims against SUNY. The remaining claims against SUNY are those alleging violations of Title VII. Defendants SUNY, OB/GYN, and Abulafia move to dismiss the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(1), (b)(6), and (h)(3). For the reasons that follow, defendants' motions are granted in part and denied in part.

I. BACKGROUND

A. The Facts

For purposes of this motion, the facts as alleged in the amended complaint are assumed to be true.

Cyrus McCalla, M.D., is an African American who was born in Jamaica. (Am. Compl. ¶ 16.) He performed services for pay for SUNY and OB/GYN from July 1994 until August 21, 2002, as a doctor and as an Assistant Professor of Obstetrics and Gynecology. (*Id.* ¶¶ 23-25, 70.) SUNY is a teaching hospital, and OB/GYN is a private corporation of physicians within SUNY. (*Id.* ¶ 27.) The arrangement with SUNY is such that OB/GYN physicians treat private patients at SUNY and then reimburse SUNY for costs and pay taxes to operate on SUNY's premises. (*Id.*) Plaintiff had "admitting privileges" at SUNY, giving him the authority to work at particular hospitals. (*Id.* ¶ 28.)

McCalla worked in the hospital in the Obstetrics and Gynecology Department (the "Department"), which treated patients, including high-risk obstetrical patients. (*Id.* ¶¶ 29, 30.) McCalla performed his duties in an exceptional and professional manner, and received several honors and awards during his tenure. (*Id.* ¶ 45.) McCalla was also instrumental in getting SUNY designated as a regional perinatal center, and was commended in December 2001, during a hospital accreditation. (*Id.* ¶¶ 46, 47.)

At any given time, the Department employed between fifteen and twenty physicians. (*Id.* ¶ 31.) The amended complaint alleges that as of September 1, 2002, there was only one Black doctor employed in the Department. (*Id.* ¶ 33.) Previously, there had been six doctors that were either African-American or Caribbean-Black individuals. (*Id.*) The amended complaint further alleges that of the twelve departments at SUNY, only one has a department chair who is Black. (*Id.*)

Defendant Ovadia Abulafia, M.D., is a Caucasian physician who was hired by SUNY after McCalla and who worked in the same Department as McCalla. (*Id.* ¶¶ 36, 41.) In or about January or February 2002, Abulafia was selected as Chair of the Department. (*Id.* ¶ 38.) This selection, according to the amended complaint, was based on race. (*Id.* ¶ 60.) From this point forward, Abulafia treated McCalla in a hostile and belligerent manner, including "statements, disparate treatment, threats, and innuendoes." (*Id.* ¶ 39.) This treatment was allegedly because McCalla is an African American. (*Id.*)

McCalla complained on several occasions to the Union, the Medical Director of the University Hospital of Brooklyn, and to an administrator about Abulafia's racist comments and actions. (*Id.* ¶ 43.) McCalla is not aware of any investigation conducted regarding his complaints of discrimination. (*Id.* ¶ 44.)

In Spring 2002, an election was held within the Department to select a departmental representative to the governing board of SUNY Downstate practice plan. (*Id.* ¶ 48.) Abulafia threatened members of the Department with reprisals, including termination, if they voted for McCalla. (*Id.* ¶¶ 49, 50.) It was during this time, in May and June of 2002, that Abulafia informed other members of the Department that he intended to fire McCalla. (*Id.* ¶ 51.) During this time, McCalla again complained about Abulafia's treatment of him. (*Id.* ¶ 52.)

In July 2002, Abulafia called McCalla into his office and presented him with a resignation letter, and told him that, if he did not sign the letter, Abulafia would ruin his career. (*Id.* ¶¶ 53, 54.) McCalla refused to sign the resignation letter, and Abulafia said he would make certain McCalla was fired. (*Id.* ¶¶ 55, 56.) Abulafia subsequently told McCalla's supervisor at Kings County Hospital, where McCalla also worked, to fire him. (*Id.* ¶ 57.)

McCalla was a term employee and his employment was considered for renewal on a yearly basis. (*Id.* ¶¶ 59, 61.) During the Summer of 2002, McCalla learned that his term appointment would not be renewed from September 2002, through the end of August 2003, and that his last day of work would be September 3, 2002. (*Id.* ¶ 59.) The decision not to renew McCalla's appointment was allegedly based on race and retaliation. (*Id.* ¶ 61.)

On August 12, 2002, McCalla made a formal complaint to the Union's attorney about his treatment and about the way Abulafia was running the Department. (*Id.* ¶ 62.) Thereafter, in August 2002, McCalla was informed that he was required to attend a hearing regarding allegations accusing him of professional misconduct. (*Id.* ¶ 63.) This hearing was "predicated on false and outlandish accusations of how [McCalla] treated patients." (*Id.* ¶ 64.) The amended complaint alleges that this hearing was devised by Abulafia to ruin McCalla. (*Id.* ¶ 65.)

When McCalla arrived at the hearing, he was informed that, no matter what happened at the hearing, he was going to be fired. (*Id.* ¶ 67.) The "defendants" did not offer evidence to support their allegations at the hearing, and at some point during the hearing McCalla was given the option of resigning in exchange for retaining his privileges at the hospital. (*Id.* ¶¶ 67, 68.) On August 21, 2002, McCalla resigned. (*Id.* ¶¶ 69, 70.) Thereafter, McCalla's employment was terminated. (*Id.* ¶ 72.) McCalla's resignation was eventually rejected by Abulafia because it was not a "standard form of resignation from State service." (*Id.* ¶ 79.)

The amended complaint alleges that defendants have made every effort to cause McCalla to lose his medical license, and have attempted to prevent plaintiff from obtaining visiting privileges at other hospitals. (*Id.* ¶ 74.) In connection with this, McCalla alleges that Abulafia mailed letters to each of McCalla's patients advising them that McCalla was no longer affiliated with the hospital and that they would need to be seen by a different doctor in the future. (*Id.* ¶ 76.) McCalla's patients were not given any information about contacting McCalla should they wish to continue under his care. (*Id.*) Also, on August 22, 2002, McCalla was advised that he was not allowed to enter his former employer's premises without notifying the office of public safety to obtain an escort. (*Id.* ¶ 77.) Because of this requirement, McCalla was not able to retrieve his possessions because he was locked out of his office. (*Id.*)

Thereafter, on August 27, 2002, McCalla was informed that a formal notice of discipline was being filed against him with the SUNY director of employee relations. (*Id.* ¶ 78.)

On September 6 2002, McCalla returned to his office to retrieve his belongings. SUNY informed him that he would be allowed to maintain copies of his private patients'

records to provide a continuity of care. (*Id.* ¶ 80.) At approximately 9:00 p.m. that day, McCalla was informed that he "had spent enough time in his office and that he must leave." (*Id.* ¶ 81.) McCalla had not received the copies of his patients' records, nor had he completed packing his belongings. (*Id.*) When he explained this to the woman who told him to leave, she "began to physically assault [McCalla] and insisted that he leave immediately." (*Id.*) McCalla requested that an assault report be filed on his behalf, but the office of public safety refused to file a report. (*Id.* ¶¶ 81, 82.) McCalla filed a harassment charge with the New York City Police Department. (*Id.* ¶ 83.) Abulafia and others at SUNY eventually accused McCalla of stealing files and committing "other unthinkable acts," and threatened McCalla with criminal prosecution. (*Id.* ¶¶ 84, 85.)

On or about September 27, 2002, McCalla filed a discrimination charge with the EEOC and, on March 10, 2003, he received a "right to sue" letter. (*Id.* ¶¶ 11, 12.)

In January 2004, McCalla filed a complaint with the State of New York, Department of Health, Public Health Council, and received a determination dismissing the complaint on July 26, 2004. (*Id.* ¶¶ 14, 15.)

B. The Instant Action

Plaintiff filed his first complaint in this case on May 27, 2003. On July 12, 2004, the Honorable Sterling Johnson, Jr., signed a stipulation staying the action pending the completion of plaintiff's proceedings before the New York City Public Health Council. On September 2, 2004, after the Council dismissed the complaint filed with the State, this case was reassigned to the Honorable Dora L. Irizarry. On September 15, 2004, plaintiff filed an amended complaint. The amended complaint alleges racial discrimination in violation of Title VII and New York State and City laws, as well as violations of 42 U.S.C. § 1981. Plaintiff also alleges tortious interference with a business relationship, breach of contract, conversion, and defamation. Finally, plaintiff seeks an accounting of OB/GYN's books for the six months prior to plaintiff's dismissal.

On February 28, 2005, defendants moved to dismiss the complaint. Thereafter, on March 7, 2005, the parties stipulated to the dismissal of several counts. Judge Irizarry referred the motion to Magistrate Judge Roanne L. Mann on April 6, 2006, for a report and recommendation. On April 12, 2006, this case was reassigned to this Court and, on April 18, 2006, the referral to Magistrate Judge Mann was vacated and the motion is now before this Court. Oral argument was held on May 24, 2006.

II. DISCUSSION

Plaintiff's amended complaint is deficient in many respects. Indeed, plaintiff has stipulated to the dismissal of several counts against SUNY and, as discussed herein, he has abandoned other claims. Specifically, as to SUNY, Counts II (violation of New York State Executive Law), III (violation of New York City administrative law), V (violation of New York State Executive Law), VI (violation of New York City administrative law), VII (violation of 42 U.S.C. § 1981), VIII (tortious interference with a business relationship), X (conversion), and XI (defamation), of the amended complaint have been dismissed by stipulation.

Thus, the only remaining claims against SUNY are those alleging violations of Title

VII. SUNY moves to dismiss these claims, and OB/GYN and Abulafia move to dismiss the complaint in its entirety. After describing the standards for a motion to dismiss, the Court addresses each claim in turn.

A. MOTION TO DISMISS STANDARD

In reviewing a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted, the court must accept the factual allegations set forth in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. *See Cleveland v. Caplaw Enterprises*, — F.3d —, 2006 WL 1314684, at *2 (2d Cir. May 15, 2006); *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005). Dismissal is warranted only if it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Weixel*, 287 F.3d at 145 (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). The appropriate inquiry is "not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims." *Twombly v. Bell Atlantic Corp.,* 425 F.3d 99, 106 (2d Cir. 2005).

B. TITLE VII, NYHRL, AND SECTION 1981 CLAIMS

A plaintiff in an employment discrimination case need only provide a "'short and plain statement'" that "'give[s] the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 512 (2002) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); *Leibowitz v. Cornell Univ.,* 445 F.3d 586, 591 (2d Cir. 2006); *see also Baldwin v. LIJ North Shore Health System*, 392 F. Supp. 2d 479, 482-83 (E.D.N.Y. 2005). Although an employment discrimination complaint need not contain specific facts establishing a *prima facie* case under *McDonnell Douglas*, the complaint must allege facts that give fair notice of plaintiff's claim and the grounds upon which it rests. *See Swierkiewicz*, 534 U.S. at 512; *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).[1]

1. ADVERSE EMPLOYMENT ACTIONS

A *prima facie* case of racial discrimination based on unlawful termination under Title VII is established by a plaintiff showing (1) membership in a protected class; (2) satisfactory job performance; (3) an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discrimination. *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 567 (2d Cir. 2000).

---

[1] The same standards apply to a discrimination claim under § 1981 and NYHRL. *See Patterson v. McLean Credit Union*, 491 U.S. 164, 186 (1989) (relating Title VII and section 1981 claims); *Song v. Ives Labs., Inc.*, 957 F.2d 1041, 1046 (2d Cir. 1992) (relating Title VII and NYHRL claims). Thus, the Court analyzes the § 1981 and the NYHRL claims in conjunction with the Title VII claim. In addition, although individual defendants may not be held personally liable for alleged violations of Title VII, under certain circumstances, an employee may be held liable under § 1981 and NYHRL. *See Chamblee v. Harris & Harris, Inc.*, 154 F. Supp. 2d 670, 676-77 (S.D.N.Y. 2001) (noting that an employee may be held individually liable under NYHRL if he has "sufficient authority and power to do more than simply carry out personnel decisions made by others"); *Sutherland v. New York State Dep't of Law*, No. 96 Civ. 6935 (JFK), 1999 WL 314186, *7 (S.D.N.Y. May 19, 1999); *see also Falbaum v. Pomerantz*, 891 F. Supp. 986 (S.D.N.Y. 1995).

5

The amended complaint alleges that SUNY unlawfully fired him based on his race when they failed to renew his term contract. (Am. Compl. ¶¶ 68 - 73.) SUNY argues that there is no adverse employment action because the only difference between plaintiff resigning and plaintiff being fired is that, with the latter, plaintiff loses his privileges with the hospital. (SUNY's Mem. at 13.) According to SUNY, the decision by its hospital to not allow plaintiff to maintain privileges does not constitute an adverse employment action. (*Id.* (citing *Beverly v. Douglas*, 591 F. Supp. 1321, 1327 (S.D.N.Y. 1984)).

The amended complaint, however, alleges that SUNY and defendant Abulafia forced plaintiff to resign by presenting him with a resignation letter and telling him that if he did not sign the letter, "Abulafia would ruin the plaintiff's career." (Am. Compl. ¶¶ 53, 54.) It further alleges that Abulafia would "make certain" plaintiff would be fired. (*Id.* ¶ 55.) In addition, the amended complaint asserts that plaintiff was informed when he arrived at his hearing regarding allegations of professional misconduct that he would be fired "no matter what happened." (*Id.* ¶ 66.) Given these allegations, and assuming, as the Court must, that each of these allegations are true, plaintiff has successfully pled a violation of Title VII based on unlawful termination against SUNY, as well as NYHRL violations against defendant Abulafia.[2] *See Leibowitz*, 445 F.3d at 591-92 (reversing district court's dismissal of a complaint where the alleged adverse employment action was a "forced" retirement after a University failed to renew her contract); *Fitzgerald v. Henderson*, 251 F.3d 345, 357-58 (2d Cir. 2001) (noting that to find constructive discharge "the trier of fact must be satisfied that the . . . working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign") (quoting *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 73 (2d Cir. 2000) (other internal quotation marks and citations omitted)); *Kader v. Paper Software, Inc.*, 111 F.3d 337, 341 (2d Cir. 1997); *Chertkova v. Connecticut Life Ins. Co.*, 92 F.3d 81, 89 (2d Cir. 1996).

Thus, SUNY's motion to dismiss plaintiff's Title VII claim alleging unlawful termination is denied, as is Abulafia's motion to dismiss the NYHRL claim.

2. HOSTILE WORK ENVIRONMENT

A hostile work environment is established by a plaintiff showing that his workplace was "permeated with 'discriminatory intimidation, ridicule, and insult . . . that is sufficiently severe or pervasive to alter the conditions of his employment and create an abusive

---

[2] The amended complaint does not allege that defendant OB/GYN unlawfully fired plaintiff – indeed, it is not even clear from the amended complaint whether plaintiff is still employed at OB/GYN. Plaintiff argues in his opposition papers that "[h]is employment with [SUNY & OB/GYN] was terminated as a result of race discrimination," but does not provide citations to the record or the amended complaint in support of this. (Pl.'s Opp. at 14.) Later, plaintiff argues that Abulafia "is the person behind the decision to force McCalla out of his employment with OB/GYN which occurred once SUNY fired him." (*Id.* at 15.) Again, there is no citation to the amended complaint, nor does the amended complaint allege how, why, or when McCalla was "forced" out of his employment with OB/GYN. Therefore, the Court only considers plaintiff's unlawful termination claim against SUNY and Abulafia.

6

working environment.'" *Howley v. Town of Stratford*, 217 F.3d 141, 153 (2d Cir. 2000) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)); *Terry v. Ashcroft*, 336 F.3d 128, 147 (2d Cir. 2003). "Isolated instances of harassment ordinarily do not rise to this level." *Cruz*, 202 F.3d at 570.

The conduct in question must be "severe or pervasive enough to create an objectively hostile or abusive work environment, and the victim must also subjectively perceive that environment to be abusive." *Feingold v. New York*, 366 F.3d 138, 150 (2d Cir. 2004); *see also Richardson v. N.Y. Dep't of Correctional Servs.*, 180 F.3d 426, 437 (2d Cir. 1999). Other factors to consider include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Terry*, 336 F.3d at 148 (quotation marks omitted). The Second Circuit has noted, however, that "while the standard for establishing a hostile work environment is high, . . . [t]he environment need not be 'unendurable' or 'intolerable.'" *Id.* (quoting *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 70 (2d Cir. 2000)). Moreover, although a hostile work environment generally consists of "continuous and concerted" conduct, "a single act can create a hostile work environment if it in fact works a transformation of the plaintiff's workplace." *Feingold*, 366 F.3d at 150 (quotations and citation marks omitted).

The gravamen of defendants' arguments in support of dismissing this claim is that (1) the alleged conduct and comments do not rise to the level of severity to support a hostile work environment claim, (2) none of the alleged comments were racially based and, therefore, plaintiff cannot sustain a hostile work environment claim based on his race, and (3) plaintiff only alleges discrete acts which do not state a claim for hostile work environment. (*See, e.g.*, OB/GYN Mem. at 7-9; SUNY Mem. at 10-12.)

The difficulty with these arguments is that this is a motion to dismiss, not one for summary judgment. As such, the Court must consider as true every allegation. *Cleveland*, 2006 WL 1314684, at *2; *Nechis*, 421 F.3d at 100. As set forth below, under that standard, the Court cannot dismiss this claim at this stage.

The amended complaint alleges, *inter alia*, the following facts in support of a hostile work environment claim: (1) Abulafia treated McCalla in a "hostile and belligerent manner" consisting of "statements, disparate treatment, threats, and innuendos," "predicated by the fact that plaintiff is [B]lack"; (2) Abulafia "routinely made derogatory remarks about the plaintiff" to another one of plaintiff's employers; (3) Abulafia threatened to fire other doctors if they voted for plaintiff for a representative position; (4) Abulafia threatened to "ruin plaintiff's career" and "make certain plaintiff would be fired"; (5) defendants required plaintiff to attend a hearing "predicated on false and outlandish accusations" and (6) on August 22, 2002 (the day after plaintiff resigned), letters were sent to plaintiff's patients informing them that he was no longer working at the hospital. (Am. Compl. ¶¶ 39, 42, 49, 50, 54, 63, 64, 65, 76.) Again, plaintiff alleges that this treatment and these actions by defendants were a result of his race. (*Id.* ¶¶ 39, 86.) At this stage, the Court cannot conclude as a matter of law that plaintiff has failed to state a claim upon which

7

relief may be granted.[3] *See Swierkiewicz*, 534 U.S. at 514; *Debenedictis v. Torre, Lentz, Gamell, Gary & Rittmaster, LLP*, No. 05 Civ. 304 (JG), 2005 WL 1421136, at *3 (E.D.N.Y. June 17, 2005).

Thus, defendants' motions to dismiss plaintiff's hostile work environment claims are denied.

3. FAILURE TO PROMOTE[4]

A *prima facie* case of racial discrimination based on a failure to promote under Title VII is established by a plaintiff showing that (1) he is a member of a protected category, (2) he applied for an available position, (3) he was qualified for the position, and (4) he was rejected under circumstances that give rise to an inference of discrimination. *Cruz*, 202 F.3d at 565; *Gomez v. Pellicone*, 986 F. Supp. 220, 228 (S.D.N.Y. 1997) (citing *McDonnell Douglas*, 411 U.S. at 802).

Plaintiff's claim of unlawful failure to promote is dismissed, as plaintiff has failed to allege in his amended complaint that he applied for or was qualified for an actual position. *See Brown v. Coach Stores, Inc.*,

---

[3] At oral argument, counsel for defendant argued that because McCalla did not allege "some sort of a racially based comment . . . [the claim] is subject to dismissal." (Oral Argument Tr. at 19.) The case law does not support such a rigid pleading standard in employment discrimination cases. *See Swierkiewicz*, 534 U.S. at 511-12 (rejecting heightened pleading for employment discrimination "because this would too narrowly constrict the role of the pleadings") (internal citation and quotation omitted); *Leibowitz*, 445 F.3d at 591-92. At summary judgment, defendant can argue that the evidence alleging a hostile work environment is insufficient or a result of something other than McCalla's race. On a motion to dismiss, however, the Court is constrained to accept the allegations in the amended complaint as true.

[4] As a threshold matter, plaintiff's opposition brief fails to oppose defendants' arguments regarding his failure to promote claim. *Lipton v. County of Orange*, 315 F. Supp. 2d 434, 446 (S.D.N.Y. 2004) ("This Court may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed."). *See also Blouin ex rel. Estate of Pouliot v. Spitzer*, 356 F.3d 348, 363 n. 9 (2d Cir. 2004); *Arbercheski v. Oracle Corp.*, No. 05 Civ. 591 (DLC), 2005 WL 2290206, at *3 (S.D.N.Y. Sept. 19, 2005). Although plaintiff's counsel responded to the Court at oral argument when questioned about his failure to promote claim, he failed to oppose defendants' motion in his opposition papers. (*See also* Local Civ. Rule 7.1.) ("[A]ll oppositions thereto shall be supported by a memorandum of law, setting forth the points and authorities relied upon . . . in opposition to the motion . . . . Willful failure to comply with this rule may be deemed sufficient cause for the . . . granting of a motion by default.") Dismissal on this basis alone may be warranted. The Court, however, will address the merits of plaintiff's failure to promote claim.

8

163 F.3d 706, 709-10 (2d Cir. 1998) (submitting that to survive a motion to dismiss the pleading must typically allege "some specific effort to apply for a particular position or positions"); *Evans v. Port Auth. of N.Y. and N.J.*, 192 F. Supp. 2d 247, 266-67 (S.D.N.Y. 2002). The amended complaint makes reference to an election for a department representative position, and that SUNY named Abulafia as Chair of the Department, but nowhere in the amended complaint does plaintiff allege that he applied for either position or was denied a promotion for which he was qualified. *See Brown*, 163 F.3d at 709. At oral argument, plaintiff's counsel argued that there was no process to select a chair of a department, that it was "a tap on the shoulder." (Oral Argument Tr. at 28.) This allegation was not made in the amended complaint.[5] The Court declines to consider facts not alleged in the amended complaint. Thus, based on the facts as alleged in the amended complaint, plaintiff has failed to allege facts sufficient to state a failure to promote claim. Hence, plaintiff's claim alleging a failure to promote is dismissed.

---

[5] Defendants incorrectly argue that the Second Circuit holds it insufficient to allege a failure to promote without alleging he "applied for a job," or "setting forth or identifying the promotion at issue." (Oral Argument Tr. at 13, 21 (citing *Brown*, 163 F.3d 706 (2d Cir. 1998)).) *Brown* distinguished the facts of the case before it and declined to address whether an employer who discriminated by not promoting, but does not post a particular job can be liable under a failure to promote theory. *Brown*, 163 F.3d at 710 n.2. This is of no consequence, however, because the Court agrees with defendants to the extent they contend plaintiff fails to allege facts stating a claim of failure to promote.

### 4. RETALIATION

A *prima facie* case of retaliation is established by a plaintiff showing that (1) he was engaged in protected activity; (2) defendants were aware of that activity; (3) he was discharged or suffered an adverse employment action; and (4) there was a causal connection between the protected activity and the adverse employment action. *Distasio v. Perkin Elmer Corp.*, 157 F.3d 55, 66 (2d Cir.1998); *see Terry*, 336 F.3d at 141. Title VII requires a plaintiff to prove that "a retaliatory motive plays a part in adverse employment actions toward an employee, whether or not it was the sole cause." *Terry*, 336 F.3d at 140-41 (internal citations omitted); *see* 42 U.S.C. § 2000e-3(a); N.Y. Exec. Law § 296(1)(e); N.Y.C. Admin. Code § 8-107(7).

The term "protected activity" refers to action taken to protest or oppose statutorily prohibited discrimination. *See* 42 U.S.C. § 2000e-3; *see also Wimmer v. Suffolk Co. Police Dep't*, 176 F.3d 125, 134-35 (2d Cir. 1991). Informal as well as formal complaints constitute protected activity. *Sumner v. United States Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990). Moreover, to establish that his activity is protected, a plaintiff "need not prove the merit of his underlying discrimination complaint, but only that he was acting under a good faith, reasonable belief that a violation existed." *Sumner*, 899 F.2d at 209; *see also Grant v. Hazelett Strip-Casting Corp.*, 880 F.2d 1564, 1569 (2d Cir. 1989).

A plaintiff may present proof of causation either "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or . . . (2) directly, through evidence of retaliatory animus directed against the plaintiff by the

9

defendant." *Gordon v. N.Y. City Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000); *see also Cosgrove v. Sears, Roebuck & Co.*, 9 F.3d 1033, 1039 (2d Cir. 1993).

Although the burden that a plaintiff must meet to survive a motion to dismiss, or even to establish a *prima facie* case, is *de minimis*, the plaintiff must at least proffer competent evidence of circumstances that would be sufficient to permit a rational finder of fact to infer a discriminatory motive. *See Cronin v. Aetna Life Ins.*, 46 F.3d 196, 204 (2d Cir. 1995).

The amended complaint pleads facts sufficient, albeit barely, to support plaintiff's retaliation claims. (*See e.g.*, Am. Compl. ¶ 61 ("The decision not to renew plaintiff's appointment for another year was based on race and retaliation."); ¶ 86 ("This all stems from a deep seated hatred of Black people . . . and retaliation stemming from the plaintiff's complaints of race discrimination and retaliation."); ¶ 115 ("SUNY . . . and OB/GYN were aware of the plaintiff's complaints.").) Although the amended complaint does not describe facts alleging what specific protected activity plaintiff engaged in, how defendants were aware of the activity, or that there was a causal connection between the protected activity and the adverse employment action, to survive a motion to dismiss, plaintiff need only plead a "'short and plain statement'" that "'give[s] the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Swierkiewicz,* 534 U.S. at 512 (2002) (quoting *Conley*, 355 U.S. at 47); *see also Leibowitz*, 445 F.3d at 591-92; *Distasio*, 157 F.3d at 66; *Terry*, 336 F.3d at 141.

Again, the Court is required to accept as true every allegation made by plaintiff. Defendants allege that plaintiff has failed to show how it knew of the protected activity, and failed to show a causal connection between the protected activity and the alleged retaliatory act. These arguments are better made in a motion for summary judgment following discovery and the complete development of this case. At this stage, however, the Court cannot conclude as a matter of law that plaintiff has failed to allege a claim based on retaliation. *See Leibowitz*, 445 F.3d at 591.

Hence, defendants' motions to dismiss those claims alleging illegal retaliation by defendants are denied.

C. STATE COMMON LAW CLAIMS

Plaintiff's common law tort claims of tortious interference with business relationships, breach of contract, conversion, defamation, and accounting, are addressed in turn.[6]

---

[6] Defendants argue that all of plaintiff's state law claims are precluded based on N.Y. Public Health Law § 2801-c. *See Falk v. Anesthesia Assoc. of Jamaica*, 228 A.D.2d 326, 329-30 (1st Dep't 1996). As to the claims alleging tortious interference with business relationships, conversion, defamation, and demand for an accounting, the Court declines to reach the merits of this alternative argument because it dismisses the claims for failing to state a cause of action, and/or for abandonment. As to the breach of contract claim and request for an accounting, the Court disagrees with defendants that N.Y. Public Health Law precludes this action. The breach of contract claim is not against a hospital, nor is it based on plaintiff's loss of hospital privileges. *See* N.Y. Public Health Law § 2801-b (1) ("It shall be an improper practice for the governing body of a *hospital* . . ." (emphasis added)); *Falk*, 228 A.D.2d at 329 ("[S]imple claims of breach of contract which focus exclusively upon the breach of contract . . . are still viable."). It is based on an alleged contract with OB/GYN whereby plaintiff

1. TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIPS

Plaintiff's claim of tortious interference with business relations fails to state a claim upon which relief may be granted. The elements of such a claim requires (1) a business relationship between plaintiff and a third party, (2) the defendant, knowing of that relationship, intentionally interfering with it, (3) the defendant acting with the sole purpose of harming the plaintiff or using dishonest, unfair, or improper means, (4) that the relationship be injured, and (5) special damages resulting from the disinterested malevolence of defendants. *Goldhirsh Group, Inc. v. Alpert*, 107 F.3d 105, 108-09 (2d Cir. 1997); *Schoettle v. Taylor*, 282 A.D.2d 411, 412 (1st Dep't 2001); *Snyder v. Sony Music Entertainment*, 252 A.D.2d 294, 300 (1st Dep't 1999); *Curiano v. Suozzi*, 63 N.Y.2d 113, 117 (1984) (requiring "special damages"). Although the amended complaint alleges a "relationship with patients," *see* Am. Compl. ¶¶ 134-36, the amended complaint fails to establish a business relationship between plaintiff and his patients. Indeed, according to the amended complaint, plaintiff was an employee of OB/GYN, and saw patients in connection with that employment. (*See* Am. Compl. ¶ 24 ("[Plaintiff] performed services for pay for SUNY . . . and OB/GYN.") In addition, as to the second element, the allegation is that defendants mailed letters to certain of plaintiff's patients informing them that plaintiff no longer worked for OB/GYN, and requesting that they "begin meeting with a new doctor in the practice." (*Id.* ¶¶ 76, 87-90.). This action by defendants, even if true, is insufficient to show defendants "intentionally interfered with his business relations through sheer malevolence, or dishonest, unfair, or improper means – an essential element of his claim." *Goldhirsh*, 107 F.3d at 109.

For these reasons, plaintiff's claim alleging tortious interference with business relations is dismissed.

2. BREACH OF CONTRACT

The elements of a breach of contract claim in New York are: (1) the existence of a contract, (2) performance by the party seeking recovery, (3) non-performance by the other party, and (4) damages attributable to the breach. *RCN Telecom Servs., Inc. v. 202 Centre Street*, 156 Fed. Appx. 349, 350-51 (2d Cir. 2005); *see Marks v. New York Univ.*, 61 F. Supp. 2d 81, 88 (S.D.N.Y.1999). Plaintiff brings this claim against OB/GYN, alleging that OB/GYN violated an agreement whereby he was entitled to receive compensation for services rendered.

At oral argument, plaintiff's counsel argued that this claim arises out of services rendered prior to plaintiff's resignation. (Oral Argument Tr. at 25.) The amended complaint alleges the existence of the contract, that plaintiff rendered services, and that OB/GYN failed to pay plaintiff as required. These allegations are sufficient to state a claim for breach of contract. Thus, OB/GYN's motion to dismiss plaintiff's claim alleging a breach of contract is denied.[7]

---

alleges he rendered services for which he was not paid. *See* (Am. Compl. ¶¶ 139-40.) (Oral Argument Tr. at 25.) (Mr Gabor: With respect to the contract claim, the damages alleged by Mr. McCalla do not flow from the loss of the job. They flow from the failure to make payments to him that he was entitled to during the time that he worked there . . . .")

[7] Defendants' motions to dismiss plaintiff's claim requesting an accounting is also denied. Defendants' only basis for dismissing the

11

### 3. CONVERSION

To state a claim for conversion under New York law, a plaintiff must allege that (1) the defendant acted without authorization; (2) the defendant exercised dominion or a right of ownership over property belonging to another; (3) plaintiff has made a demand for the property; and (4) the demand is refused. *See Seanto Exports v. United Arab Agencies*, 137 F. Supp. 2d 445, 451 (S.D.N.Y. 2001) (citing *Heneghan v. Cap-A-Radiator Shops*, 132 Misc. 2d 936 (N.Y. Dist. Ct. Nassau County 1986)); *see also Schwartz v. Capital Liquidators, Inc.*, 984 F.2d 53, 53 (2d Cir. 1993) (quoting *Meese v. Miller*, 79 A.D.2d 237 (4th Dep't 1981)).

This claim fails. Plaintiff fails to assert facts or even allege that he owns the "files, medical records, [or] documents" that he claims "defendants" have converted. (Am. Compl. ¶ 143.) Based on the amended complaint, certain individuals (not named as defendants) prevented plaintiff from removing all of his materials from his office. (Am. Compl. ¶¶ 80, 81, 82.) The amended complaint does not allege that these files or medical records belong to plaintiff. If anything, plaintiff concedes he was only entitled to "copies" of them. (*See* Am. Compl. ¶ 80.) Nor does plaintiff allege that he demanded the return of any files, medical records, or documents, and was refused. *See Seanto Exports*, 137 F. Supp. 2d at 451.

In addition, "an action for conversion of money will lie [only] where 'there is a specific, identifiable fund and an obligation to return or otherwise treat in a particular manner the specific fund in question.'" *The High View Fund, L.P. v. Hall*, 27 F. Supp. 2d 420, 429 (S.D.N.Y. 1998) (quoting *Manufacturers Hanover Trust Co v. Chemical Bank*, 559 N.Y.S.2d 704, 712 (1st Dep't 1990)); *see also Republic of Haiti v. Duvalier*, 626 N.Y.S.2d 472, 475 (1st Dep't 1995); *Double Alpha, Inc. v. Mako Partners, L.P.*, No. 99 CIV. 11541 (DC), 2000 WL 1036034, at *4 (S.D.N.Y. July 27, 2000). "'More particularly, if the allegedly converted money is incapable of being described or identified in the same manner as a specific chattel, it is not the proper subject of a conversion action.'" *High View*, 27 F. Supp. 2d at 429 (quoting *Interior by Mussa, Ltd. v. Town of Huntington*, 664 N.Y.S.2d 970, 972 (2d Dep't 1997)). Here, plaintiff seeks "fees due" in connection with his conversion claim. As plaintiff does not allege a specific, identifiable fund with his money, nor does he allege specific identifiable proceeds, his conversion claim based on "fees due" fails. *See High View*, 27 F. Supp. 2d at 429.

### 4. DEFAMATION[8]

Plaintiff's defamation claim is dismissed because the amended complaint fails to state a cause of action for defamation because plaintiff fails to allege fault, falsity, or assert "the particular words complained of." (*See* SUNY Mem. at 22-23 (citing N.Y.C.P.L.R. and cases)). *See also Pisani v. Staten Island Hosp.*, No. 06-CV-1016 (JFB), 2006 WL

---

accounting claim is its argument that N.Y. Public Health Laws bar this claim. As discussed in footnote 6, this argument is rejected as it pertains to OB/GYN. Thus, plaintiff's request for an accounting remains.

[8] Plaintiff failed to oppose defendants' motions to dismiss plaintiff's defamation claim, and for this reason alone, dismissal is warranted. *See Blouin ex rel. Estate of Pouliot*, 356 F.3d at 363 n. 9; *Lipton*, 315 F. Supp. 2d at 446; *Arbercheski*, 2005 WL 2290206, at *3; Local Civ. Rule 7.1. The Court, however, addresses the merits of the claim.

1517754, at *3 (E.D.N.Y. May 31, 2006) (describing elements for defamation as (1) a false and defamatory statement of fact concerning the plaintiff; (2) that was published by the defendant to a third party; (3) due to defendant's negligence (or actual malice depending on the status of the person libeled); and (4) injury to the plaintiff.) (citing cases).

Thus, the claim alleging defamation is dismissed.

III. CONCLUSION

For the foregoing reasons, defendants' motions to dismiss the amended complaint are granted in part and denied in part. The remaining claims against the State defendants SUNY are those claims alleging violations of Title VII based on a hostile work environment, illegal termination, and retaliation. The remaining claims against OB/GYN are those claims alleging violations of Title VII, NYHRL, and § 1981 based on a hostile work environment, and retaliation, as well as claims for breach of contract, and an accounting. As to Abulafia, the only remaining claims are potential violations of NYHRL and § 1981 based on a hostile work environment and illegal termination.

All remaining claims are dismissed for failing to state a claim for which relief may be granted. Given the significant time that has passed, the parties are directed to expeditiously proceed with discovery in accordance with Magistrate Judge Mann's rules and directions.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: June 8, 2006
Central Islip, NY

\* \* \*

Plaintiff is represented by David George Gabor, Esq., Gabor & Gabor, 400 Garden City Plaza, Suite 406, Garden City, New York 11530. Defendants SUNY and Dr. Ovadia Abulafia were represented on the briefs by Assistant Attorney General Stephen M. Jacoby, Esq., and at oral argument and going forward by Assistant Attorney General David B. Diamond, Esq., Elliot Spitzer, Attorney General of the State of New York, 120 Broadway, Room 24D20, New York, New York 10271. Defendant Downstate OB/GYN P.C. is represented by Alesia J. Kantor, Esq., Allen B. Roberts, Esq., and Robyn Kim Ruderman, Esq., Epstein, Becker & Green, 250 Park Avenue, New York, New York 10177.